UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., et al., | No. 2:14-cv-2549-WBS-KJN |
| Plaintiffs, | |
| v. | ORDER AND |
| ULISES RIOS, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

INTRODUCTION

    Presently pending before the court is plaintiffs DISH Network L.L.C. ("DISH Network"), EchoStar Technologies L.L.C. ("EchoStar"), and NagraStar LLC's ("NagraStar") motion for default judgment against defendant Ulises Rios, who is the only named defendant in this action. (ECF No. 8.) Defendant failed to file an opposition to plaintiffs' motion in accordance with Local Rule 230(c). At the February 12, 2015 hearing on the motion, attorney Timothy Frank appeared telephonically on behalf of plaintiffs and defendant failed to appear. Plaintiffs' counsel confirmed that he has not received any communication from defendant.

    After carefully considering the written briefing, the court's record, and the applicable law, the court recommends that plaintiffs' motion for default judgment be GRANTED.

////

////

BACKGROUND

The background facts are taken from plaintiffs' complaint, unless otherwise noted.  (See Plaintiffs' Complaint, ECF No. 1 ["Compl."].)

Plaintiff DISH Network is "a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system."  (Compl. ¶ 9.)  "DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price."  (Id. ¶ 10.)  "DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights."  (Id. ¶ 11.)  According to plaintiffs, the works that DISH Network broadcasts are copyrighted, and DISH Network has the authority of the copyright holders to protect the works from unauthorized reception and viewing.  (Id. ¶ 12.)  Plaintiff EchoStar "provides receivers, dish antenna, and other digital equipment for the DISH Network system," whereas "[s]mart cards and other proprietary security technologies that form a conditional access system" are supplied by plaintiff NagraStar.  (Id. ¶ 14.)

Plaintiffs allege that "DISH Network programming is digitized, compressed, and scrambled prior to being transmitted…."  (Compl. ¶ 13.)  Plaintiffs explain the transmission as follows:

> The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the NagraStar entitlement control message and forwards it to the smart card.  Provided the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a NagraStar control word.  The control word is then transmitted back to the receiver to decrypt the DISH Network satellite signal.  Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH Network subscriber.

(Id. ¶¶ 17-18.)

Plaintiffs allege that defendant circumvented the system, and received transmissions of "DISH Network's satellite broadcasts of copyrighted television programming without payment of the required subscription fee" by "subscribing to the pirate television service known as NFusion Private Server ("NFPS")." (Compl. ¶ 8.) Plaintiffs explain that, "[t]hrough NFPS, Defendant illegally obtained DISH Network's control words or 'keys,' which Defendant then used to decrypt DISH Network's satellite signal and watch DISH Network programming without authorization." (Id.) According to plaintiffs, defendant purchased subscriptions to NFPS from an individual named Francis Philip, who eventually cooperated with DISH Network's investigation, and whose records showed that defendant "purchased subscriptions to NFPS on or about September 14, 2012, November 23, 2012, December 9, 2012, and February 15, 2013." (Id. ¶ 26; see also Declaration of Steven Rogers, ECF No. 8-3 ["Rogers Decl."] ¶¶ 3-6, Exs. 1-9.) With the assistance of a company performing Internet investigation services and computer forensics analysis, plaintiffs also ascertained that defendant made several posts on hosted online discussion forums relating to satellite television piracy, indicating that defendant had been using NFPS to intercept DISH Network programming as early as July 2011, even before purchasing NFPS subscriptions from Philip. (Rogers Decl. ¶¶ 2-3, 6-8, Exs. 9-18.)

Based on the above, plaintiffs commenced this action on October 30, 2014, alleging, *inter alia*, a claim for violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1)(a) & 2520. (Compl. ¶¶ 38-41.)[1] A proof of service in the record reflects that plaintiffs, through a process server, effectuated service of process on defendant by personally serving defendant on November 8, 2014. (ECF No. 5.) On December 4, 2014, plaintiffs requested that the Clerk of Court enter default against defendant, and on December 8, 2014, the Clerk of Court entered defendant's default. (ECF Nos. 6, 7.) The instant motion for default judgment followed.

////

---

[1] Plaintiffs' complaint also asserted other claims, but plaintiffs seek the entry of a default judgment premised solely on their claim for violation of the ECPA. As such, no analysis of plaintiffs' other claims is necessary.

3

(ECF No. 8.)  Plaintiffs seek $10,000.00 in statutory damages and a permanent injunction, as discussed further below.  (Id.)

LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not

4

be entered on a legally insufficient claim"). A party's default does not establish the amount of damages. Geddes, 559 F.2d at 560.

DISCUSSION

Appropriateness of the Entry of Default Judgment Under the Eitel Factors

1. *Factor One: Possibility of Prejudice to Plaintiffs*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiffs would face prejudice if the court did not enter a default judgment, because plaintiffs would be without another recourse against defendant. Accordingly, the first Eitel factor favors the entry of a default judgment.

2. *Factors Two and Three: The Merits of Plaintiffs' Substantive Claim and the Sufficiency of the Complaint*

The court considers the merits of plaintiffs' substantive claim and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim on which plaintiffs may recover. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

The ECPA prohibits "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept, or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Even though 18 U.S.C. § 2511 is a criminal statute, 18 U.S.C. § 2520 provides a civil private cause of action for violation of 18 U.S.C. § 2511(1)(a). Echostar Satellite, L.L.C. v. Viewtech, Inc., 543 F. Supp. 2d 1201, 1208 (S.D. Cal. 2008). Specifically, 18 U.S.C. § 2520 states, in part, that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). The Ninth Circuit Court of Appeals has previously determined that electronic communications for purposes of the ECPA include satellite television signals. DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).

Here, plaintiffs' complaint alleged that defendant had intentionally and illegally intercepted DISH Network's satellite transmissions of television programming by using defendant's subscriptions to NFPS. (Compl. ¶¶ 38-41.) That contention was supported by well-pled factual allegations, as outlined in detail above. As such, plaintiffs have adequately set forth a claim under 18 U.S.C. § 2520(a) for a violation of 18 U.S.C. § 2511(1)(a).

Accordingly, the second and third Eitel factors favor the entry of a default judgment.

### 3. *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In this case, plaintiffs seek $10,000.00 in statutory damages. As discussed below, such an award of statutory damages is authorized by the ECPA for the type of conduct allegedly committed by defendant. See 18 U.S.C. § 2520(c)(2)(B). Therefore, the sum of money at stake does not in itself preclude the entry of a default judgment.

### 4. *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and defendant has not appeared to dispute any such facts. Thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the court concludes that the fifth Eitel factor favors a default judgment.

### 5. *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is no indication in the record that defendant's default was due to excusable neglect. Despite having been served with plaintiffs' complaint, the request for entry of default, and the instant motion for default judgment, defendant failed to appear. (ECF Nos. 5, 6-2, 8-7.) Thus, the record suggests that defendant has chosen not to defend himself in this action,

and that the default did not result from excusable neglect. Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

      6.    *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, upon consideration of all the <u>Eitel</u> factors, the court concludes that plaintiffs are entitled to a default judgment against defendant, and recommends that such a default judgment be entered. All that remains is a determination of the specific relief to which plaintiffs are entitled.

<u>Terms of the Judgment to Be Entered</u>

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Plaintiffs' motion for default judgment requests statutory damages and injunctive relief, both of which were also requested in the complaint. (<u>See</u> Prayer for Relief, Compl. at 8-9.) Each form of relief is addressed separately below.

<u>*Statutory Damages*</u>

Plaintiffs seek $10,000.00 in statutory damages based on their claim under 18 U.S.C. § 2520.

Plaintiffs' request for statutory damages is authorized by the statute. The court "may assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is *the greater* of $100 a day for each day of violation *or* $10,000." 18 U.S.C. §

7

2520(c)(2) (emphasis added).  Here, plaintiffs have provided evidence of defendant's purchase of multiple subscriptions to NFPS in 2012-2013 and his reported use of NFPS at various times in 2011-2012.  However, the exact period of time that defendant used NFPS to intercept DISH Network programming, as well as the extent of such interception, cannot be determined from the evidence available, although it may be inferred that defendant intentionally intercepted programming for more than a year.  Because plaintiffs are unable to definitively establish their actual damages or provide a complete damages model based on the number of days that defendant was in violation of the ECPA, plaintiffs elected to pursue statutory damages of $10,000.00, as authorized by the statute.

"The court has the discretion to award either the statutory sum or no damages at all, but may not elect an award somewhere between the two." DISH Network, LLC v. Hoggard, 2014 WL 2208104, at *5 (E.D. Cal. May 28, 2014) (collecting cases); DISH Network, LLC v. Gonzalez, 2013 WL 2991040, at **5-6 (E.D. Cal. Jun. 14, 2013) (collecting cases).  In exercising their discretion, courts have considered a range of factors, including "(1) the severity or minimal nature of the violation; (2) whether there was actual damage to the victim; (3) the extent of any intrusion into the victim's privacy; (4) the relative financial burdens of the parties; (5) whether there was a reasonable purpose for the violation; and (6) whether there is any useful purpose to be served by imposing the statutory damages amount." Gonzalez, 2013 WL 2991040, at *8 (citing DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 325-26 (4th Cir. 2008)).

In this case, the limited evidence of a severe violation potentially weighs against the imposition of statutory damages.  For example, there is no evidence that defendant's interception was for commercial profit and limited evidence that his personal use was necessarily very extensive.  However, the lack of evidence in that regard is largely attributable to defendant's failure to appear in the action.  Conceivably, plaintiffs would have been capable of presenting more evidence concerning the nature and extent of defendant's violation had they been allowed to conduct discovery.  Therefore, this factor only slightly weighs against the imposition of statutory damages.

////

Significantly, none of the other factors weigh against the imposition of statutory damages. As an initial matter, the factor relating to the extent of intrusion into the victim's privacy does not appear to apply to a typical satellite television piracy case. Also, defendant has not appeared to provide the court with any evidence of his financial circumstances and the consequent potential financial burden that statutory damages would impose on him. Moreover, the three remaining factors definitively favor awarding statutory damages. Plaintiffs have sufficiently demonstrated that they suffered actual damages through, at a minimum, the loss of a legitimate subscriber for the period that defendant intercepted DISH Network's programming without paying the subscription fee. Furthermore, when plaintiffs' well-pled factual allegations are taken as true, there can be no legitimate reason for defendant's actions, which amount to piracy. Finally, the imposition of statutory damages would serve the important purpose of deterring future ECPA violations by defendant and others. See Gonzalez, 2013 WL 2991040, at *10 ("Awarding Plaintiffs no damages would effectively reward Defendant for wrongful actions by allowing the misconduct to remain unsanctioned.").

Therefore, the court concludes that the balance of relevant factors militate in favor of an award of $10,000.00 in statutory damages, and recommends that such damages be awarded.

*Permanent Injunction*

Plaintiffs further request injunctive relief—more specifically, that defendant, and anyone acting in concert or participation with defendant, be permanently enjoined from: (a) circumventing or assisting others in circumventing DISH Network's security system, or intercepting or assisting others in intercepting DISH Network's satellite signal; and (b) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system. (See ECF No. 8-1 at 14.)

The ECPA authorizes "such preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). To obtain a permanent injunction, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

9

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations.").

Here, plaintiffs have shown that they suffered an irreparable injury for which remedies available at law are inadequate. As discussed above, the amount of damages attributable to defendant's conduct cannot be accurately computed, because plaintiffs are unable to ascertain the exact duration and extent of defendant's interception of DISH Network programming. Plaintiffs also point out that circumvention of DISH Network's security measures undermines plaintiffs' investment in such measures to protect DISH Network's programming, and results in the need for costly security updates. (See Declaration of Gregory Duval, ECF No. 8-2 ["Duval Decl."] ¶ 18.) Dividing the costs of anti-piracy security measures among the persons engaged in piracy of DISH Network programming is impossible, because the total number of persons involved and the full extent of each person's involvement are not known. (Id. ¶ 19.) Additionally, piracy damages the goodwill and reputation of plaintiffs, whose businesses depend on the delivery of secured programming, and such damages are difficult, if not impossible, to compute. (Id. ¶ 20.) Moreover, given defendant's intentional interception of DISH Network's programming for a significant period of time in the past, damages alone appear inadequate to prevent future piracy by defendant.

Furthermore, considering the balance of hardships between plaintiffs and defendant, a permanent injunction is warranted, because defendant would suffer no cognizable hardship from merely being prevented from engaging in unlawful activity. By contrast, plaintiffs would suffer further loss in the event of future piracy by defendant. Finally, the public interest would undoubtedly be served by the enforcement of a federal law such as the ECPA.

Therefore, the court finds that all criteria for a permanent injunction have been satisfied, and recommends that an injunction be entered on the terms proposed by plaintiffs.

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion for default judgment (ECF No. 8) be GRANTED.
2. Judgment be entered in plaintiffs' favor and against defendant.
3. Plaintiffs be awarded statutory damages in the amount of $10,000.00.
4. Defendant, and anyone acting in concert or participation with defendant, be permanently enjoined from: (a) circumventing or assisting others in circumventing DISH Network's security system, or intercepting or assisting others in intercepting DISH Network's satellite signal; and (b) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.
5. The Clerk of Court be directed to vacate all dates and close this case.

IT IS ALSO HEREBY ORDERED that plaintiffs shall forthwith serve a copy of this order and findings and recommendations on defendant by U.S. mail at his last-known address.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated:  February 13, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE